BOOTH et al. v. BROWN et al.

(Circuit Court, D. Washington, N. D.    August 11, 1894.)

RECEIVERS' EMPLOYES—SYMPATHETIC STRIKE—REINSTATEMENT.

Employés of receivers of a railroad joined in a general strike, without grievance of their own, for the purpose of compelling, by obstruction of travel and hindrance to traffic, parties to one side of a pending controversy to yield actual or supposed rights; quitting the service under such circumstances as made it necessary to fill their places in order to continue the operation of the road. *Held*, that the court should not, by reason of their past services, direct the receivers to reinstate them, as they had not been discharged for fault, and their reinstatement would displace competent and worthy men, who had worked during the strike under abuse from crowds in sympathy with the strikers. Nor was an order for their re-employment in other positions necessary, where without it they would be called upon to fill vacancies as they should occur.

This was a petition by John Booth and 14 others to be reinstated in their former positions as engineers and trainmen on the Seattle, Lake Shore & Eastern Railroad, which they had vacated by joining in the general strike of railway employés instigated by the American Railway Union.

James Hamilton Lewis, for petitioners.

HANFORD, District Judge. The petition to reinstate former employés of the Seattle, Lake Shore & Eastern Railroad in the positions which they respectively held prior to the late general railroad strike and boycott, presented to me in their behalf by Col. James Hamilton Lewis, and his argument in support thereof, has been duly considered; and I am constrained to refuse to make any order controlling the discretion of the receivers, as prayed for in the petition, for the following reasons:

This petition sets forth no accusation against the receivers or their subordinate officers, nor any grievance whatever. I regard it as an application for employment from men who, by experience and past service, have become proficient in the operation of trains upon this road; and, in that light, it merits respectful consideration, so far as to weigh the reasons for and against making the order as prayed.

For answer to the representations made by the petition as to the character and past behavior of these ex-employés who are now asking to be reinstated in the positions which they held prior to going out, as they say, "from the employ of the company, out of respect and deference to the order of which, as a fraternity and a brotherhood, we were members," it is sufficient to say that no charges have been made against them, and they were not discharged for any fault. On the contrary, they all voluntarily quit the service under such circumstances as to not only leave the superintendent free to engage other men to fill their places, but under the necessity of either doing so, or suspending the operation of the road. Fortunately for the road and the communities served by it, the management was not lacking in will or ability to keep the road open. Competent and worthy men were found to fill every vacancy, so that

every scheduled passenger and mail train made its run during the continuance of the strike.

While I appreciate the good intentions of the business men of Seattle and others who have joined in making this appeal, and while I consider that these ex-employés should not be blacklisted, and that it is desirable that they should be employed, I cannot forget that it is impossible to reinstate them without turning out of employment an equal number of worthy men, who not only possess the ability, but also the courage, necessary to handle trains during turbulent times. Mr. Bird, Mr. Brooks, and others now in charge of engines on this road rank with the most competent railroad engineers in the United States. They have lived in Seattle for a long time and have families dependent upon their labors for support. For no offense, other than doing honest work, they have been jeered at and abused by crowds of people subservient to or in sympathy with Debs. The cabs in which they ride show the scars made by stones and missiles hurled at their heads. To deprive them of their situations at this time would be an injustice to them, and base ingratitude on the part of their employers. I shall not order the receivers to pursue any such policy, and it is not necessary for the court to make an order authorizing or requiring the receivers to employ again any of those who were formerly in the service of the company, for the reason that without such order the superintendent will place all applicants upon the waiting list, and call them to fill places for which they are competent, as fast as vacancies occur, without directions from the court. The officers of this court keep no black list.

I do not wish my statement to the effect that these petitioners were not discharged for any fault on their part to be misunderstood as an assent on my part to the proposition advanced in this petition that the ex-employés joined in a general strike without having "any intention of interfering with the successful management of the road," or that such action may be properly regarded as nothing more than a misfortune to themselves, and as involving no degree of culpability. I have only intended to make the point that, as they were not discharged, they are not now entitled to have an opportunity for vindicating themselves, and the court is not called upon to settle any controversy between the receivers of the road and their employés. The action of these men in joining a so-called "sympathetic strike," otherwise known in this country as a "boycott," must be condemned as an attempt, without justification or excuse, to destroy the business which had heretofore yielded them wages, and the misfortune which they now complain of is entirely a result of their own folly. A strike by men employed to operate a railway always has for its object the obstruction of travel, and a hindrance to traffic on that line, and means oppression to all who are dependent upon it for means of transportation; and an attempt by the men so employed, when they have no grievance of their own, to deprive innocent people of their rights, and to oppress the public, for the purpose of subjecting the parties on one side of a pending controversy to such an irresistible pressure as to compel

them to yield actual or supposed rights, is necessarily intended to inflict injury upon others, and must be condemned by all right-minded people as an intentional wrong. By joining in a strike under such conditions and for such purpose, these employés have absolved their employers from all obligations to accord them any preference right to employment over others, by reason of their past services. They are receiving fair treatment by being placed upon the waiting list.